## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **NUCAR CONSULTING, INC.,** | : | CASE NO. 1:06-cv-00284-UNA |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **DEFENDANT'S ANSWER,** |
| | : | **AFFIRMATIVE DEFENSES &** |
| **ARBOGAST BUICK-PONTIAC-GMC** | : | **COUNTERCLAIM** |
| **TRUCK, INC.,** | : | |
| | : | |
| Defendant. | : | |

### DEFENDNAT ARBOGAST BUICK-PONTIAC-GMC TRUCK, INC.'S
### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 12 and 81(c), Defendant, Arbogast Buick-Pontiac-GMC

Truck, Inc. ("Arbogast"), for its Answer to the Complaint states as follows:

### ANSWER TO COMPLAINT

1.      Arbogast is without knowledge or information sufficient to form a belief as to the

truth of the allegations in ¶ 1 and, therefore, denies them.

2.      Arbogast admits the allegations in ¶ 2.

3.      Arbogast admits the allegations of ¶ 3 to the extent they are consistent with

Exhibit A; Arbogast denies the remaining allegations of ¶ 3.

4.      Arbogast denies the allegations of ¶¶ 4, 5 and 6.

5.      Arbogast denies all allegations of the Complaint that it has not expressly admitted

to be true.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

6.    The Complaint fails to state a claim against Arbogast upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

7.    Plaintiff's claims are barred by the doctrines of waiver, estoppel and laches.

### THIRD AFFIRMATIVE DEFENSE

8.    Plaintiff's claims are barred by its material breach of contract.

### FOURTH AFFIRMATIVE DEFENSE

9.    Plaintiff has failed to mitigate its alleged damages.

### FIFTH AFFIRMATIVE DEFENSE

10.    Plaintiff's claims are limited by setoff.

### SIXTH AFFIRMATIVE DEFENSE

11.    Plaintiff's claims are barred due to illegality of the contract.

### SEVENTH AFFIRMATIVE DEFENSE

12.    Plaintiff's claims are barred or limited by express terms and provisions of the contract that Plaintiff failed to attach to the Complaint.

### EIGHT AFFIRMATIVE DEFENSE

13.    Plaintiff's claims are barred by failure of consideration.

### NINTH AFFIRMATIVE DEFENSE

14.    Arbogast has discharged all duties under the contract.

## TENTH AFFIRMATIVE DEFENSE

15.    The cause of action alleged in Plaintiff's Complaint is barred by the doctrine of unclean hands.

## ELEVENT AFFIRMATIVE DEFENSE

16.    The contract referenced in Plaintiff's Complaint is unenforceable, either in whole or in part, because of mutual mistake.

## TWELVETH AFFIRMATIVE DEFENSE

17.    The contract referenced in Plaintiff's Complaint is unenforceable, either in whole or in part, because of unconscionability.

WHEREFORE, Defendant, Arbogast Buick-Pontiac-GMC Truck, Inc., demands:

(1)    That the Complaint of Plaintiff, NuCar Consulting, Inc., be dismissed with prejudice;

(2)    That it be awarded its costs and litigation expenses, including attorneys' fees; and

(3)    That the Court grant such further and other relief to Arbogast to which it may be entitled.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, Defendant, Arbogast Buick-Pontiac-GMC Truck, Inc. ("Arbogast"), for its Counterclaim states as follows:

18.    Arbogast is an Ohio corporation with its principal place of business in Ohio. Arbogast is in the business of new and used motor vehicle sales.

19.    Plaintiff, NuCar Consulting, Inc. ("NuCar"), is a Delaware corporation with its principal place of business in Delaware. NuCar is in the business of planning, designing and implementing promotional campaigns for motor vehicle dealers.

20.     NuCar solicited business from Arbogast.  NuCar holds itself out as having the requisite skill and knowledge to plan, design and implement promotional campaigns for motor vehicle dealers such as Arbogast.

21.     On March 30, 2004, NuCar and Arbogast signed an agreement providing that NuCar would produce a comprehensive feasibility study and prepare the layout and design for NuCar's promotional programs (the "Feasibility Agreement").  In exchange, Arbogast paid NuCar the sum of $3,500.  A copy of the Feasibility Agreement is attached as "Exhibit A."

22.     On April 14, 2005, NuCar and Arbogast signed an Agreement (the "Program Agreement").  Under the terms of the Program Agreement, NuCar agreed to provide "the membership benefit program known as the Platinum Plus Preferred Customer Membership Program and the accumulated earnings program known as the Auto Awards program [(the "Programs")]."  A copy of the Program Agreement is attached as "Exhibit B."

23.     The Programs included a merchant-discount component (affiliated merchants offer discounts to members of the Programs) as well as a referral component (members of the Programs earn points for referring customers to Arbogast).

24.     The Program Agreement also provides: "In the event that this Agreement, any provision thereto or performance of any provision hereof, is found to be illegal or unenforceable under the law as it is now or hereinafter in effect, either party may elect to terminate the Agreement in its entirety."  Program Agreement at 4.

25.     On October 13 or 24, 2005, NuCar and Arbogast executed an Addendum to Agreement.  A copy of the Addendum is attached as "Exhibit C."  Pursuant to the terms of the Addendum, Arbogast paid to NuCar the sum of $5,541.66.  Under the terms of the Addendum, "No Services shall be provided, nor will NuCar be compensated for the same, unless Client has

approved the materials, participating merchants, or other actions required to be submitted by
NuCar to Client." Addendum, ¶ 1(c).

26.     Following the execution of the Addendum, Arbogast discovered that the major
component of the Programs – members of the Programs earn points redeemable for products or
service for referring business to Arbogast – was unlawful in the State of Ohio.

27.     Pursuant to Ohio Rev. Code § 4517.20, payment of "bird dog fees" is prohibited.
Specifically, under the terms of the statute, Arbogast may not "directly or indirectly, solicit the
sale of a motor vehicle through a pecuniarily interested person other than a salesperson licensed
in the employ of a licensed dealer," *and* may not "pay any commission or compensation in any
form to any person in connection with the sale of a motor vehicle unless the person is licensed as
a salesperson in the employ of the dealer."

28.     Due to the illegality of NuCar's Programs in Ohio, Arbogast has reasonably
withheld approval of the Programs' materials and of any other action necessary for NuCar to
implement the Programs.

### FIRST CLAIM FOR RELIEF FOR COUNTERCLAIM

29.     Arbogast incorporates the allegations of ¶¶ 18 through 28 into this paragraph as if
they were fully re-written herein.

30.     The subject matter of the Feasibility Agreement, the Program Agreement, and the
Addendum involves acts that are illegal or unlawful.

31.     All or portions of the Feasibility Agreement, the Program Agreement, and the
Addendum are void.

32.     Pursuant to the terms of the Program Agreement, Arbogast is entitled to terminate
the Agreement in its entirety.

33.     Arbogast is entitled to rescind the Feasibility Agreement, the Program Agreement, and the Addendum and is entitled to recover all amounts paid to NuCar.

## SECOND CLAIM FOR RELIEF FOR COUNTERCLAIM

34.     Arbogast incorporates the allegations of ¶¶ 18 through 33 into this paragraph as if they were fully re-written herein.

35.     NuCar knew or should have known that the subject matter of the Feasibility Agreement, the Program Agreement, and the Addendum was unlawful in the State of Ohio.

36.     NuCar solicited Arbogast's business; negotiated the Feasibility Agreement, the Program Agreement, and the Addendum; and accepted and retained payment from Arbogast under circumstances that are unjust to Arbogast.

WHEREFORE, Defendant, Arbogast Buick-Pontiac-GMC Truck, Inc., demands judgment in its favor on its Counterclaim as follows:

(1)     On the First Claim for Relief, for judgment against NuCar Consulting, Inc., in the amount of $9,041.66;

(2)     On the Second Claim for Relief, for judgment against NuCar Consulting, Inc., in the amount of $9,041.66;

(3)     For its attorney fees and court costs; and

(4)    For such other and further relief as this Court finds just and equitable.

Respectfully submitted,

_____
Wayne A. Marvel, Esq. (DE #1078)
1300 North Broom Street
Wilmington, DE 19806
(302) 425-5177
Attorneys for Defendant,
Arbogast Buick-Pontiac-GMC Truck, Inc.

OF COUNSEL:

Chad D. Cooper, Esq.
Thompson Hine LLP
2000 Courthouse Plaza, N.E.
P.O. Box 8801
Dayton, Ohio  45401-8801
Telephone:  (937) 443-6909
Facsimile:  (937) 443-6830

EXHIBIT A

**THIS AGREEMENT** ("Agreement") dated this _3 0_ day of _March_ , 2004.

## PARTIES

Arbogast Pontiac Buick GMC ("Customer")
PO Box 219
Troy, Ohio 45373

NuCar Consulting ("NuCar")
Suite 100
P.O. Box 5000
313 N. DuPont Highway
Odessa, DE 19730

## SERVICES

NuCar will provide to Customer, or on Customer's behalf to others, those services specified in Exhibit A ("Services").

The description of such Services may be modified from time to time by the written agreement of both parties.

## COMPENSATION

For providing of the Services, Customer agrees to pay NuCar the fee amounts described in Exhibit B ("Compensation"). NuCar shall not be obligated to perform any Services until Customer pays to NuCar the Compensation.

## OWNERSHIP OF MATERIALS

NuCar shall retain full right, title and interest in and to all materials, computer software and equipment, including, but not limited to, campaign ideas, slogans, copy themes, preliminary sketches, layouts, copy, finished artwork, transcriptions, speeches, visual aids, out takes, and ideas (collectively, the "Materials"). Customer shall use all reasonable and necessary means to protect NuCar's ownership in the Materials, including, but not limited to, the application of proper copyright notices in NuCar's name and the execution and delivery of assignments of all ownership rights to NuCar. AutoAwards™, AutoRewards™, and Platinum Plus Club™, are the property of NuCar and may not be used in any way without the express written consent of NuCar.

IN WITNESS WHEREOF, the undersigned parties have duly executed
The Agreement on the date first above written in a manner appropriate to each.

Arbogast Buick Pontiac GMC

By: _____

Name: DAVID Arbogast

Title: Pres.

NuCar Consulting, Inc.

By: _____

Name: Chandler Greene

Title: VP Sales + Marketing

## EXHIBIT "A" SERVICES

A. Comprehensive Feasibility Study
1. Technology/Hardware Review
2. Develop Program Specifications
3. Investment Analysis
4. Fulfillment System
5. Program/Benefits Synopsis
6. Co-Operative Advertising Analysis
7. Liability Accrual Methods
8. Implementation/Roll Out Strategy
9. Return on Investment Analysis

B. Layout/Design
1. Program Name and Logo
2. Membership Token Design
3. Signage Design
4. Application/Brochure Layouts
5. Handbook Cover (If Applicable)

## EXHIBIT "B" COMPENSATION

Total project fee of $3,500 payable at commencement of project.

EXHIBIT B

## AGREEMENT
## PLATINUM PLUS™ AND AUTO AWARDS™ PROGRAMS

**THIS AGREEMENT** ("Agreement") dated this _14_ day of _April_ 200_5_.

### PARTIES

Dave Arbogast Auto Group ("Customer")
PO Box 219
Troy, Ohio 45373

NuCar Consulting, Inc. ("NuCar")
P.O. Box 5000
313 North DuPont Highway
Suite 100
Odessa, Delaware 19730

### SERVICES

NuCar will provide to Customer, or on Customer's behalf to others, the membership benefit program known as the Platinum Plus™ Preferred Customer Membership Program and the accumulated earnings program known as the Auto Awards™ program (collectively, the "Programs" and individually, a "Program"), as described by those services specified in Exhibit "A" ("Services")

The description of such Services may be modified from time to time by the written agreement of the parties.

### COMPENSATION

For the provision of the Services, Customer agrees to pay NuCar the amounts described in Exhibit "B". NuCar shall invoice Customer for the Services and Customer shall pay NuCar upon receipt of such invoices pursuant to the procedures set forth in Exhibit "B" hereof.

### TERM

Except as otherwise provided herein, the term of this Agreement shall commence upon the execution of this Agreement and continue for a period of three years. In the event neither party gives the other party written notice of termination at least ninety (90) days prior to the end of the term of this Agreement, this Agreement shall automatically be renewed upon the same terms and conditions contained herein for three (3) years, unless or until terminated by either party giving to the other party written notice of termination at least ninety (90) days prior to the end of the then current term of this Agreement.

### TERMINATION

This Agreement or portions of the services not yet performed by either party may be terminated at any time for any reason upon NuCar providing to Customer at least thirty (30) days prior written notice.

This Agreement shall immediately terminate upon the occurrence of any of the following events,

NuCar Initials

_____
Client Initials

*Page 1 of 7 - 03/29/04*

each of which both parties agree is good cause for termination:

(1) If either party makes a general assignment for the benefit of creditors, shall have been adjudicated bankrupt, shall have filed a voluntary petition for bankruptcy or for reorganization or effectuated a plan or other similar arrangement with creditors, shall have filed an answer to a creditor's petition, or if a petition is filed against it for an adjudication in bankruptcy or reorganization, or if either party shall have applied for or permitted the employment of a receiver or a trustee or a custodian of any of its property or assets; or

(2) If an injunction is issued against a party prohibiting the performance of that party's obligations hereunder.

## CONDUCT AFTER TERMINATION

Upon termination of the Agreement, Customer shall deliver to NuCar or its designee all of NuCar's material, software and computer equipment in Customer's possession or control, and all other information or materials relating to the services provided under this Agreement. Return of said materials, software and computer equipment shall be completed within 30 days after the termination of this Agreement.

## OWNERSHIP OF MATERIALS

NuCar shall retain full right, title and interest in and to all materials, computer software and equipment, including, but not limited to, campaign ideas, slogans, copy themes, preliminary sketches, layouts, copy, finished artwork, transcriptions, speeches, visual aids, out takes, and ideas (collectively, the "Materials"). Customer shall use all reasonable and necessary means to protect NuCar's ownership in the Materials, including, but not limited to, the application of proper copyright notices in NuCar's name and the execution and delivery of assignments of all ownership rights to NuCar.

Any use of NuCar's trade designations (including, but not limited to, trademarks or service marks owned by NuCar) shall be included by Customer as part of the materials only after NuCar's prior written approval of such proposed use.

## EXCLUSIVITY

During the term of this Agreement, and during each subsequent renewal period, NuCar shall not act in a similar capacity for or on behalf of an automobile retailer within 45 miles of Customer's primary place of business (the "Territory"), with the exception of (i) any existing Platinum Plus™ customer and (ii) any existing or future agreement with an automobile manufacturer or distributor for the installation of a national or regional Program within the Territory. Program exclusivity within the Territory only includes the AutoAwards or Platinum Plus™ Preferred Customer Membership Program.

## WARRANTIES

NuCar represents, warrants and covenants to Customer that it is a corporation duly organized and validly existing under the laws of the State of Delaware, and the execution and performance of the Agreement has been duly authorized and approved by its representative(s) and the undersigned persons of NuCar have full power and authority to enter into this Agreement on behalf of NuCar.

NuCar shall keep all records relating to the Services provided to Customer using generally accepted accounting principles.

NuCar makes no other warranties or representations, express or implied.

NuCar Initials

Client Initials

*Page 2 of 7 - 03/29/04*

## LIMITATION ON DAMAGES

(1) EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF REVENUES, LOSS OF PROFITS OR COST OF PROCUREMENT OF SUBSTITUTE GOODS OR TECHNOLOGY, EVEN IF THAT PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION SHALL APPLY TO ANY CLAIM OR CAUSE OF ACTION, WHETHER IN CONTRACT OR TORT, STRICT LIABILITY OR BREACH OF WARRANTY, BUT SHALL NOT APPLY IF SUCH DAMAGES ARE THE RESULT OF THE OTHER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

(2) THE PARTIES ACKNOWLEDGE THAT THIS SECTION HAS BEEN INCLUDED AS A MATERIAL INDUCEMENT FOR EACH PARTY TO ENTER INTO THIS AGREEMENT AND THAT THE PARTIES WOULD NOT HAVE ENTERED INTO THIS AGREEMENT, BUT FOR THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION.

## INDEMNIFICATION

Customer does hereby agree to indemnify, defend and hold NuCar, its officers, directors, employees, dealers, agents, successors and assigns harmless from and against all actions, suits, proceedings, judgments, demands, claims, whether valid or invalid, liability, loss or expenses whatsoever (including reasonable attorneys' fees) connected with, or arising from, any breach or misrepresentation by Customer or the non-performance of any covenant or obligation to be performed by Customer under this Agreement

## NOTICES

All notices hereunder shall be sent in writing and shall be deemed to have been duly given if hand delivered or mailed by registered or certified mail, postage prepaid, and if addressed to the address first above written or such other address as may be subsequently furnished in writing by the notified party.

## CONFIDENTIALITY

NuCar and Customer agree that neither party will disclose, transfer, use, sell or give away to any person, firm or corporation, without the other party's prior consent, (1) any proprietary or confidential information communicated to it by the other party or any of its agents, or (2) any of the materials

## BINDING EFFECT

This Agreement shall inure to the benefit of and bind the parties hereto and their respective successors and permitted assigns.

## UNDERSTANDING

This Agreement contains the entire understanding of the parties with respect to the subject matter contained herein and may be amended only by written instrument executed by both parties or their respective successors or permitted assigns.

## GOVERNING LAW

This Agreement shall be governed by and construed and interpreted in accordance with the internal laws of the State of Delaware. All disputes, controversies or claims connected with, arising out of or relating to this Agreement or any modification, extension or renewal thereof shall be subject exclusively to an action being brought solely in the Courts of the State of Delaware. The parties consent to in personam jurisdiction of the Courts of the State of Delaware, for all purposes in connection with this arbitration and any litigation, and waive, fully and completely, any right to dismiss and/or transfer any action.

## SEVERABILITY

In the event that this Agreement, any provision thereto or performance of any provision hereof, is found to be illegal or unenforceable under the law as it is now or hereinafter in effect, either party may elect to terminate the Agreement in its entirety or elect to have the parties excused from performance of such portion or portions of this Agreement as shall be found to be illegal or unenforceable under the laws or regulations without affecting the validity of the remaining provision of this Agreement.

**IN WITNESS WHEREOF**, the undersigned parties have duly executed this Agreement on the date first above written in a manner appropriate to each.

Dave Arbogast Auto Group

By:

Name: _DAVID Arbogast_

Title: _4-14-05_

NuCAR CONSULTING, INC.

By:

Name: _Chandler Greene_

Title: _VP Sales + Marketing_

**EXHIBIT "A"**
**SERVICES TO BE PROVIDED**

**BUSINESS COMPILATION**    YES OR NO

NuCar will provide local business compilation of participating merchants. Compilation to include; offer negotiation, contractual commitment, merchant education, honorary employee memberships, and employee awareness signage. Merchant to display participation identification sticker where applicable

**CARD PRODUCTION/CARD FULFILLMENT**    YES OR NO

Upon receipt by NuCar of requested electronic information from Customer, NuCar to establish a customer file and earnings account to match with token provided at time of delivery by Customer. Customer responsible for proving each member with a token and data entry as needed to enter and register each new member. NuCar to provide semi-customized membership token as selected by Customer for each participating member up to the total number of cards allocated to Customer and described in Exhibit "A".

**ACCUMULATED EARNINGS NETWORK**    YES OR NO

NuCar to design and implement a semi-custom member earnings account for each member. Earnings account to include data recovery unit, receipt printer, cabling, power supplies, and licensing for Customer and home-office software. NuCar agrees to warrant equipment against defects in materials and workmanship for the life of this Agreement. Customer assumes all responsibility for damages due to abuse or misuse of said equipment or any damage caused by Customer, its employees, agents, guests, invitees or customers.

**DATA MANAGEMENT**    YES OR NO

NuCar to accept downloads of member transaction information from Customer on a scheduled basis determined by NuCar and Customer. NuCar to maintain data and issue a monthly dealership summary.

**STATE RESALE TAX EXEMPTION CERTIFICATE**    YES

Customer agrees to provide NuCar with a state resale tax exemption certificate for all states in which customer plans to utilize program.

**PREFERRED CUSTOMER HANDBOOK**    YES OR NO

NuCar to provide customized membership handbook for each member described this Agreement. Membership handbook to include benefits summary, and participating merchant display ads.

**POINT OF PURCHASE MATERIALS**    YES OR NO

NuCar to provide point-of-purchase material as described in this Agreement.

**EDUCATIONAL SEMINARS**    YES OR NO

NuCar to provide educational seminars for all staff members deemed appropriate by NuCar and Customer. Initial seminars are designed to acclimate staff to program and concepts. Additional educational seminars are designed to enhance utilization and effectiveness of concepts. Employee meetings will be scheduled consecutively and Customer must make the appropriate employees available at the scheduled meeting times. Seminars will be scheduled approximately during the fourth and eighth months after the installation date.

NuCar Initials

Client Initials

*Page 5 of 7 - 03/29/04*

**PROJECT SPECIFICATIONS**

| Annual Qty. | Description |
|---|---|
| 2800 | Customized Preferred Customer Handbooks up to 48 pages |
| 2 | Data recovery system with related modems and hardware |
| 1 | Receipt printers |
| 1 | Interface Kits |
| 1 | Home-Office software license |
| 1 | Site software licenses |
| 600 | Premiere Membership cards with key tags    280 |
| 2200 | Elite Membership cards with key tags |
| 0 | Customized Last Chance Postcards |
| 0 | Service Sign Up Postcard Mailers |
| 8400 | Sales brochures with membership applications |
| 52 | Weekly Web Site Uploads |
| 4 | Projected savings display boards |
| 2800 | Vehicle Stickers/Mirror Hangers |
| 15-20 | Local and regional participating merchants |

- Quarterly In-store Educational seminars

- Monthly dealership summaries

- Software customization as described in this document

- Technical support for data recovery system

- Conceptual ideas for program marketing

- Participating merchant education and installation

- Product delivery and maintenance

## EXHIBIT "B"
## PAYMENT SCHEDULE

Minimum thirty-six (36) month investment invoiced in thirty-six (36) equal monthly payments of

$ _5541.66_ to begin the _15_ day of _April_ , 20_05_ and conclude on the _15_ day

of _____, 20_05_ . Payments to be invoiced by NuCar Consulting on the 1st of

each month and is due on or before the 15th of each month.

Additional consumables required by Customer during the Term shall be provided by NuCar at

NuCar's then prevailing rates for such consumables.

EXHIBIT C

**NuCar CONSULTING**

*Creative Marketing Concepts For Customer Driven Clients.*

## ADDENDUM TO AGREEMENT

This Addendum executed this 24th day of October 13, 2005 by and between NuCar Consulting, Inc. (hereinafter "NuCar") and Dave Arbogast Pontiac Buick GMC (hereinafter "Client")

**WHEREAS,** the parties entered into an Agreement dated, April 14, 2005 and;

**WHEREAS,** the parties mutually desire a continuation of the existing agreement pursuant to the terms and conditions set forth in underlying agreement.

**NOW THEREFORE,** in exchange of good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1. Services.

   a. Exhibit "B" of the existing Agreement are hereby deleted in their entirety and replaced by the new Exhibit "B" incorporated herein.

   b. NuCar will provide to Client, or on Client's behalf to others, those services specified in collective Exhibit "A" ("Services"). Services may be changed from time to time by mutual written agreement between both parties

   c. No Services shall be provided, nor will NuCar be compensated for the same, unless Client has approved the materials, participating merchants, or other actions required to be submitted by NuCar to Client. Such approval shall be at Client's sole discretion, which may not be unreasonably withheld.

   d. Except as otherwise provided herein, the term of the Agreement shall be extended upon the execution of this Addendum and continue for a period of three years. Upon the expiration of this term, the Agreement shall continue for a like term, unless either party serves ninety (90) days written notice, as provided herein, indicating its intention to terminate the Agreement upon the expiration of the then current term.

   All other provisions of the existing Agreement remain unchanged and in full force and effect during the new term of this Addendum. Both parties hereby renew each and every promise, covenant, warranty, term and condition of the existing Agreement.

**IN WITNESS WHEREOF,** the parties have set their hand and seals the day and date first above written.

Dave Arbogast Pontiac Buick GMC          NuCar Consulting, Inc.

By: _____          By: _____

Name: _DAVID Arbogast_          Name: _Chandler B. Greene_

Title: _Pres_          Title: _VP Sales & Mkt_

Suite 100 • 313 N DuPont Highway • P.O. Box 5000 • Odessa, Delaware • 19730-5000 • Phone: 302-696-6000 • Fax: 302-696-7000 • www.nucarconsulting.com

*Page 1 of 2 - 10/13/05*

## EXHIBIT "B" PAYMENT SCHEDULE

Minimum thirty-six (36) month term. Balance of contract invoiced in thirty-six (36) equal monthly payments of $5,541.66 per month. The first payment of $5,541.66 is due at time of Agreement execution as a non- refundable deposit. The remaining balance invoiced in thirty-five (35) equal monthly payments in the amount of $5,541.66 per month beginning on November 15, 2005 and concluding on September 15, 2008. Additional consumables available deemed outside the scope of this contract based on NuCar's then prevailing rates.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon Douglas A. Shachtman

Douglas A. Shachtman & Associates 1200 Pennsylvania Avenue, Suite 302, Wilmington,

Delaware 19806, by ordinary U.S. Mail, postage prepaid this 8th day of May, 2006.

_____
Wayne A. Marvel, Esq.